UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGEL CHRISTINA MEYERS,

                Plaintiff,

v.                                                        1:18-CV-1476 (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | MARY ELLEN GILL, ESQ.<br>KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | SIXTINA FERNANDEZ, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 13.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.     RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1963. (T. 56.) She completed the 10th grade. (T. 202.) Generally, Plaintiff's alleged disability consists of anxiety, depression, agoraphobia, goiter, "neck pain," "shoulder pain," and eczema. (T. 201.) Her amended alleged disability onset date is July 28, 2015. (T. 11, 263.)

### B. Procedural History

On January 23, 2015, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 56.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 7, 2017, Plaintiff appeared before the ALJ, Larry Banks. (T. 30-55.) On November 28, 2017, ALJ Banks issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-29.) On October 22, 2018, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-26.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 28, 2015. (T. 13.) Second, the ALJ found Plaintiff had the severe impairments of: anxiety and depression. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 14.) Fourth, the

ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels with the following nonexertional limitations:

> limited to performing unskilled tasks (no complex tasks); no more than occasional contact with supervisors; nor more than incidental interaction with coworkers (i.e., very little, if any, contact to perform work related duties); no contact with the public with respect to performing work related duties; [Plaintiff's] ability to adapt or manage oneself is limited to the performing of tasks that do not exceed the stress level of unskilled work; [Plaintiff] would be off task no more than 5% of the workday due to concentration and focus problems; [Plaintiff] is able to sustain concentration, persistence or pace in two hour blocks of time with normal work breaks to complete a normal workday.

(T. 16.) Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 25-26)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in formulating a mental RFC "without reference to opinion evidence." (Dkt. No. 9 at 16-20.) Second, and lastly, Plaintiff argues the ALJ's physical RFC was not supported by substantial evidence. (*Id*. at 20-22.) Plaintiff also filed a reply in which she relied on her original arguments. (Dkt. No. 12.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ correctly determined Plaintiff's RFC based on the medical and nonmedical evidence of record. (Dkt. No. 11 at 6-14.) Second, and lastly, Defendant argues the ALJ correctly found Plaintiff did not have a severe physical impairment. (*Id*. at 14-17.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.    ANALYSIS**

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1)[1]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

Plaintiff argues the ALJ's mental RFC determination was defective because the ALJ "found highly specific limitations that were not supported by any of the medical opinion evidence[; therefore,] it is thus clear that he arrived at the RFC with reference only to his interpretation of the medical records, without the assistance of expert opinion." (Dkt. No. 9 at 17.)

An ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion. The ALJ is obligated to formulate a plaintiff's RFC based on the record as a whole, not just upon the medical opinions alone. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018). The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F.

---

[1] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs"). Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); see Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Therefore, contrary to Plaintiff's assertion, the formulation of an RFC absent a medical opinion does not automatically equate to an improper RFC based on a lay interpretation of raw medical evidence.

Next, Plaintiff asserts the ALJ erred in weighing the opinion evidence provided by Plaintiff's treating social worker, Tracy Sherman. (Dkt. No. 9 at 17-20.) Plaintiff asserts the ALJ impermissibly cherry-picked the evidence and provided faulty reasoning in weighing Ms. Sherman's opinions. (Id.)

Plaintiff's treating social worker, Ms. Sherman, completed various forms concerning Plaintiff's mental abilities. On February 9, 2016, Ms. Sherman completed a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Determination" form for the New York State Office of Temporary and Disability Assistance. (T. 403-404.) She indicated Plaintiff was "very limited" in her ability to: understand, remember, and carry out instructions; maintain attention and concentration; and function in a work setting at a consistent pace. (T. 404.) She opined Plaintiff was "moderately limited" in her ability to: make simple decisions; interact appropriately with others; and maintain socially appropriate behavior without exhibiting behavioral extremes. (Id.) On July 5, 2016 and December 15, 2016, Ms. Sherman completed additional employability assessment forms. (T. 399, 401.) She opined Plaintiff was "moderately limited" in carrying out instructions; making simple decisions;

interacting appropriately with others; and maintain socially appropriate behavior without exhibiting behavioral extremes. (T. 400, 402.) She opined Plaintiff was "very limited" in understanding and remembering instructions; maintain attention and concentration; and appearing able to function in a work setting at a consistent pace. (T. 400, 402.)

On March 8, 2017, Ms. Sherman completed a "Mental Medical Source Statement." (T. 347-352.) Ms. Sherman indicated Plaintiff was "unable to meet competitive standards" in her ability to: remember work-like instructions; understand and remember very short and simple instructions; carry out very short and simple instructions; work in coordination with or proximity to others without being unduly distracted; and make simple work-related decisions. (T. 349.)[2] She indicated Plaintiff had "no useful ability to function" in her ability to: maintain attention for a two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and deal with normal work stress. (*Id*.) She indicated Plaintiff was "seriously limited" in her ability to: ask simple questions to request assistance and be aware of normal hazards and take

---

[2] The form provided the following five options for the provider to choose from: "unlimited or very good," "limited but satisfactory," "seriously limited," "unable to meet competitive standards," and "no useful ability to function." (T. 349.) The terms were further defined in terms of percentages. For example, "unable to meet competitive standards" is defined as "noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week." (*Id*.)

appropriate precautions. (*Id.*) She indicated Plaintiff had "no useful ability to function" in all areas of semiskilled and skilled work. (T. 350.) She indicated Plaintiff was "limited but satisfactory" in her ability to interact with the general public; "seriously limited" in her ability to maintain socially appropriate behavior; and had "no useful ability to function" in traveling in unfamiliar places or using public transportation. (*Id.*)

It is well-established that the ALJ has both the ability and the responsibility to resolve conflicts in the evidence and to weigh all of the available evidence "to make an RFC finding that is consistent with the record as a whole." *Matta,* 508 F. App'x. at 56 (noting also that the ALJ's conclusions do not need to "perfectly correspond" with any of the opinions from medical sources in order to be supported by substantial evidence) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Consequently, the fact the ALJ found some portions of the medical opinions to be consistent with the evidence while others not, is not a legal error, but rather a proper execution of the ALJ's duty to weigh all evidence and resolve conflicts.

Here, the ALJ noted which portions of Ms. Sherman's opinions he relied on, which he rejected, and the reasons for his treatment of these limitations. (T. 18-22.) The ALJ acknowledged Ms. Sherman treated Plaintiff since 2015 and overall, the ALJ afforded her opinions "moderate weight." (T. 22.) The ALJ then provided reasoning for adopting portions of Ms. Sherman's opinions and not others.

As an initial matter, by virtue of her status as a social worker, Ms. Sherman's opinions are not entitled to any special weight. *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 398 (W.D.N.Y. 2018). Although a social worker may be a treating health care provider, not all treating health care providers are "treating sources" under the

applicable Social Security Regulations. A "treating source" is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. § 416.902. There are five categories of "acceptable medical sources." *Id*. § 416.913(a). Social workers are not included within those categories. Social workers are listed among the "other medical sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. *Id*. § 416.913(d)(1). Despite her status as a non-acceptable medical source, the ALJ thoroughly discussed her opinions and treatment records, and provided reasoning to support his weight determinations.

First, the ALJ properly concluded that he did not adopt statements on whether Plaintiff was disabled or unable to work because those are issues reserved to the Commissioner. (*Id*.); 20 C.F.R. § 416.927(d) (the ultimate finding of whether a plaintiff was disabled and cannot work is "reserved to the Commissioner.").

Second, the ALJ concluded Ms. Sherman's treatment notations did not support the "very limited" portion of her opinions, specifically referring to notations in which Plaintiff's attention and concentration were observed to be normal, her thought process appropriate, her stream of thought clear and coherent, and Plaintiff was described as cooperative. (T. 22-23.) Indeed, despite opining Plaintiff was very limited in maintaining attention and concertation and working at a consistent pace, Ms. Sherman observed during treatment sessions that Plaintiff's attention and concertation were "normal." (T. 420-421, 430-431, 453-454.)

10

The ALJ reasoned Ms. Sherman's "moderate" limitations were supported by the evidence in the record. (T. 22.) Plaintiff asserts, without citation to any authority, a "moderate limitation in making simple decisions could obviously conflict with the ALJ's RFC limiting Plaintiff to performing unskilled tasks." (Dkt. No. 9 at 18.) However, the Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *see also Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment."). Therefore, contrary to Plaintiff's assertion, a moderate limitation would not necessarily preclude unskilled work.

The ALJ afforded "little weight" to Ms. Sherman's March 2017 opinion. (T. 23.) The ALJ reasoned the terms used in the form, such as "no useful ability to function" were "vague" and did not provide "specific information" concerning Plaintiff's functional

abilities. (*Id*.) The ALJ further reasoned the March 2017 opinion was inconsistent with treatment notations which the ALJ outlined. (*Id*.) Plaintiff argues the ALJ's reasoning is misplaced because the form provided specific definitions of the terms. (Dkt. No. 9 at 19.)

To be sure, the March 2017 form contained definitions for the terms provided. The ALJ did not fault the format of the opinion for lack of definitions, the ALJ faulted the terms for being "vague" and unspecific. (T. 23.) Here, the form definitions did "little to overcome the ALJ's criticism," that the terms provided no specific information, thus rendering them "vague." *Tennant v. Comm'r of Soc. Sec.*, No. 6:16-CV-360, 2017 WL 1968674, at *7 (N.D.N.Y. May 10, 2017). Indeed, although the form contained definitions, the definitions provided little assistance in determining Plaintiff's functional limitations. For example, the form defined the term "unable to meet competitive standards" as "your patient has noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week." (T. 349.) Based on this definition, if a plaintiff were "unable to meet competitive standards" in her ability to "carry out very short and simple instructions" she could have "noticeable difficulty" in this area either 1.68 hours (21 percent of eight hours) up to 3.2 hours (40 percent of eight hours) a work day; or, plaintiff could have difficulty in this area 1.05 days (21 percent of a work week) up to 2 days (40 percent of a work week) a work week. Not only is there no equivalent to Social Security terminology used in the form, the definitions provided on the form itself are overly broad, vague, and frankly confusing. Therefore, the ALJ did not err in his criticism of the March 2017 form completed by Ms. Sherman.

After considering the record as a whole, the ALJ accounted for Plaintiff's mental limitations he found supported by substantial evidence in the record by limiting Plaintiff to unskilled work with additional social limitations. The ALJ relied primarily on the medical opinions provided by acceptable medical sources, namely the consultative examiner, Christine Ransom, Ph.D. and Plaintiff's treating primary care provider, Patricia Danaher, M.D.

On May 1, 2015, Dr. Ransom performed a psychiatric evaluation and provided a medical source statement. (T. 300-303.) Dr. Ransom opined Plaintiff had no limitations in her ability to: follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration for simple tasks; maintain a simple regular schedule and learn simple new tasks. (T. 302.) She opined Plaintiff would have "mild difficulty" in her ability to perform complex tasks, relate adequately with others, and appropriately deal with stress "due to panic disorder without agoraphobia, currently mild." (*Id*.) The ALJ afforded Dr. Ransom's opinion "moderate weight." (T. 21.) The ALJ determined, based on subsequent treatment notations, Plaintiff had greater social limitations than opined by Dr. Ransom. (T. 21.)

On January 25, 2016, Dr. Danaher completed an employability assessment form. (T. 313.) She opined Plaintiff had "no evidence of limitations" in her ability to: understand and remember instructions; carry out instructions; maintain attention and concentration; and make simple decisions. (T. 314.) She opined Plaintiff was "moderately limited" in her ability to: interact appropriately with others and maintain socially appropriate behavior without exhibiting behavioral extremes. (*Id*.)

Here, the ALJ's mental RFC was based on the evidence in the record as a whole. The ALJ relied primarily on the opinions of acceptable medical sources, Drs. Ransom and Danaher. The ALJ found greater social limitations than provided by Dr. Ransom based on additional evidence in the record, including Dr. Danaher's opinion Plaintiff had "moderate" limitations in social functioning. The ALJ properly assessed the statements provided by Ms. Sherman and adequately explained his reasoning for not adopting them in their entirety. Accordingly, the ALJ did not substitute his own lay judgment for competent medical opinion, the ALJ properly assessed the opinions in the record, and the ALJ's mental RFC was supported by substantial evidence in the record.

Next, Plaintiff argues the ALJ's physical RFC determination was not supported by substantial evidence, including any medical opinion evidence. (Dkt. No. 9 at 20-22.) Plaintiff argues the ALJ failed to properly account for Plaintiff's obesity and eczema. (*Id*.)

The ALJ's physical RFC determination was proper and supported by substantial evidence in the record. Here, no medical source opined Plaintiff had any physical exertional limitations. On May 1, 2015, consultative examiner, Donna Miller, D.O., performed an examination and provided a medical source statement. (T. 304-308.) Dr. Miller listed diagnosis as: eczema, chronic neck pain, recently diagnosed thyroid goiter, and early glaucoma. (T. 307.) Based on her examination of Plaintiff, Dr. Miller opined Plaintiff should "avoid extreme heat or cold given her eczema." (T. 307.)

The ALJ afforded Dr. Miller's opinion "little weight." (T. 24.) The ALJ reasoned the opinion was inconsistent with her findings and evidence in the record that Plaintiff's eczema did not impair her ability to function. (*Id*.) The ALJ noted Plaintiff had full range

of motion in her upper extremities and her hand and finger dexterity were intact. (*Id*.) The ALJ further noted evidence in the record indicating Plaintiff treated her eczema with topical medications and records did not contain evidence that her eczema impaired her ability to perform basic work activities. (*Id*.) Further, Plaintiff fails to provide any evidence in the record to support her argument that her obesity, alone or in combination with other impairments, caused work related functional limitations.

Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that Plaintiff failed to meet her burden in this case. Plaintiff states the ALJ's finding of "no physical limitations whatsoever is not supported by the opinion evidence, which she entirely rejected." (Dkt. No. 9 at 21.) Contrary to Plaintiff's assertion, the ALJ's finding of no physical limitations is wholly supported by the opinion evidence in the record. Dr. Miller, based on her examination, opined Plaintiff had only environmental limitations. (T. 24.) Dr. Danaher indicated Plaintiff had no evidence of limitations in her physical functioning. (T. 314, 316.) Therefore, Plaintiff has failed to meet her burden. The ALJ's determination, that Plaintiff had no physical functional limitations, was supported by the medical opinion evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: February 25, 2020

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge